IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| HAYDEE VELEZ,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>Defendant. | CIVIL NO. 19-1717 (CVR) |

**OPINION AND ORDER**

**INTRODUCTION**

On July 26, 2019, Plaintiff Haydeé Vélez ("Plaintiff") filed the present case challenging the denial of her petition for Social Security disability benefits by Defendant Andrew Saul, Commissioner of Social Security ("Commissioner" or "Defendant"). (Docket No. 3).[1] Plaintiff then consented to proceed before a Magistrate Judge and the presiding District Judge referred this case to the undersigned for all further proceedings, including the entry of judgment. (Docket Nos. 5, 7 and 8).[2]

On December 2, 2019, the Commissioner answered the Complaint and shortly thereafter filed a copy of the administrative record. (Docket Nos. 14 and 15). On February 24, 2020, Plaintiff filed her memorandum of law (Docket No. 20) and on May 27, 2020, the Commissioner filed his memorandum of law. (Docket No. 23).

---

[1] 42 U.S.C. Sec. 405(g), provides for judicial review of the final decision of the Commissioner. "... [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment without remanding the cause for rehearing". Section 205(g).

[2] The government has provided a general consent to proceed before a Magistrate Judge in all Social Security cases. 28 U.S.C. section 636(b)(1)(A), (c)(1) and (c)(2); Fed. R. Civ. P. 73(a).

After careful review of the entire record, the Court AFFIRMS the Commissioner's decision.

## ADMINISTRATIVE AND PROCEDURAL HISTORY

Plaintiff, a former Medical Secretary, filed an application for disability benefits with an alleged onset date of disability of July 15, 2013. The application was initially denied, as was the reconsideration. (Tr. pp. 63-66 and 67-69). Plaintiff then requested an administrative hearing before an Administrative Law Judge ("ALJ") which was held on May 3, 2018. Plaintiff was present with counsel and testified regarding her claims. (Tr. pp. 37-62). Testimony was also heard from a Vocational Expert ("VE") regarding the kinds of jobs that Plaintiff could be able to perform despite her ailments. Id.

On May 25, 2018, the ALJ issued an opinion finding Plaintiff was not disabled from the onset date through her last insured date. (Tr. pp. 22-29). The ALJ made the following findings of fact in this case as part of his fact-finding responsibilities:

1. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018.

2. Plaintiff did not engage in any substantial gainful activity since the alleged onset date of July 15, 2013.

3. Through the date last insured, Plaintiff had the following severe impairment: degenerative disc disease.

4. Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1.

5.  Through her last insured date, Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a), except lifting/carrying 10 pounds occasionally and less than 10 pounds frequently; sitting for 6 hours, alternate to standing for 5 minutes after every 2 hours of sitting, standing/walking for 2 hours in an 8 hour workday; push/pull as much as can lift/carry.

6.  Plaintiff was capable of performing past relevant work as a Medical Secretary. This work did not require the performance of work-related activities precluded by Plaintiff's RFC.

8.  Plaintiff was not under a disability, as defined in the Social Security Act, from July 15, 2013, through the date of the decision.

The Appeals Council subsequently denied Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner which is subject to review by this Court. (Tr. pp. 1-7).

Plaintiff objects the ALJ's final decision denying her disability benefits, alleging the ALJ did not properly evaluate certain medical opinions, and that he failed to correctly evaluate her mental impairments. The Commissioner disagrees.

**STANDARD**

To establish entitlement to disability benefits, the burden is on the claimant to prove disability within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146-47, 107 S.Ct. 2287, 2294 (1987). It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, a five-step sequential evaluation process must be applied in making a final determination. 20 C.F.R. § 404.1520; see Bowen, 482 U.S. at 140-42; Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982). At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. § 404.1520(b). If not, the decision-maker proceeds to step two, where he or she must determine whether the claimant has a medically severe impairment or combination of impairments. See § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §

404.1520(d); 20 C.F.R. pt. 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. § 404.1520(e). Through each of these steps, the burden remains on the claimant to establish and evidence her disability.

Once the ALJ determines that the claimant cannot perform his or her former kind of work, in the fifth and final step of the process the burden shifts to the Commissioner, and demands a determination of whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform any other work whatsoever. § 404.1520(f).

In the case at bar, the ALJ determined at step 2 that Plaintiff had at least one severe impairment, and at step 3, that the impairment was not equivalent to any listed impairment and, thus, not severe enough to preclude gainful activity. The ALJ then found at step 4 that Plaintiff could perform at least one of her previous jobs as a Medical Secretary, and stopped his analysis there, finding Plaintiff was not disabled.

## LEGAL ANALYSIS

The Court is authorized under 42 U.S.C. § 405(g) to review the pleadings submitted by the parties and the administrative record and enter a judgment either affirming,

modifying, or reversing the final decision of the Commissioner. That review is limited, however, "to determining whether the [ALJ] used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). The Court must defer to the ALJ's findings of fact, as long as those findings are supported by substantial evidence. Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortíz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (*quoting* Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). In other words, in order to succeed, a claimant would have to establish that no other reasonable fact finder would examine the evidence and conclude as the ALJ did. If the findings and conclusions are reached by "ignoring evidence, misapplying the law, or judging matters entrusted to experts," however, then they are not conclusive and must be reversed. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

It is important to note that "the drawing of permissible inference from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018), Nguyen, 172 F.3d at 31. Thus, this Court will set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error. Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez, 647 F.2d at 222.

Plaintiff did not raise any issues as to her physical ailments. As such, the Court does not disturb the ALJ's findings in that area. Plaintiff only challenges the conclusions about her mental condition. She argues that the ALJ's determination that she could return to her past work as a Medical Secretary and was therefore not disabled is not based on substantial evidence for two reasons. First, she avers that the ALJ failed to properly evaluate the medical opinions of record, which led him to incorrectly conclude that she only had mild limitations in mental functioning. Second, she posits rather confusingly and in passing, that because the ALJ and the VE discussed hypotheticals involving mental impairments at step 5, the ALJ improperly concluded at step 4 that Plaintiff was able to return to her past relevant work.

The Commissioner contends that the there was substantial evidence in the record to uphold the ALJ's conclusion that Plaintiff's mental impairments were not severe and that the alleged opinions that she claims the ALJ did not consider were nothing more than Plaintiff's subjective complaints and not findings. As to the second issue, he argues that Plaintiff failed to demonstrate that she had a mental limitation that should have been considered by the ALJ at step 5.

**A. The ALJ's determination regarding Plaintiff's mental condition.**

The Social Security Administration defines an RFC as the most an individual can still do despite his or her limitations, and it is assessed based on all the relevant evidence in the individual's case record. 20 CFR § 404.1545. In determining an RFC, all medically determinable impairments that a claimant suffers from are considered from the record evidence, including non-severe impairments and the claimant's objective complaints. Id.

In support of Plaintiff's argument, she claims that certain opinion evidence was not considered. For example, she asserts in her brief that the opinion of her treating psychologist, Ramón Parilla ("Dr. Parrilla") that she had poor concentration and/or memory, lack of energy and/or continuous fatigue, was irritable and lost interest in activities, was not considered. (Docket No. 20, p. 5). This was stated in Plaintiff's record for a visit in September 2014. (Tr. p. 112). As correctly advanced by the Commissioner, however, what Plaintiff characterizes as Dr. Parrilla's opinion is Plaintiff's subjective report of her symptoms, as clearly stated in her record. His analysis of that symptomology comes later, in the "mental status examination" section of that session, where he found Plaintiff with intact short term, long term and working memory, normal thought process and affect, normal motor behavior and perception, and appropriate attention, orientation, among others. (Tr. p. 114). At this stage, while the ALJ is obliged to consider Plaintiff's subjective complaints, he must weigh that information against the record evidence and reach a decision as to what conclusion is supported by substantial evidence as a whole. In other words, a claimant's subjective complaints must be evidenced by the record evidence as well.

Turning specifically to that record evidence, in the case at bar the ALJ determined at step 2 that Plaintiff's medically determinable impairments of major depressive disorder (single episode, moderate) and a generalized anxiety disorder were not severe. In evaluating a claimant's medically determinable mental impairment, the ALJ must evaluate a claimant's degree of functional limitation by looking at four functional areas, the so called "paragraph B" criteria. 20 C.F.R. § 404.15020a(b)(2) and

§404.1520a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. These are: 1) understanding, remembering or applying information; 2) interacting with others; 3) concentration, persistence and maintaining pace; and 4) adapting or managing oneself. If the degree of limitation in each of the first three areas is deemed mild and there are no episodes of decompensation in the fourth area, the ALJ will generally conclude that the claimant's mental impairment is not severe. See 20 C.F.R. § 404.1520a(d)(1).

The ALJ found Plaintiff had mild limitations in each of the first three areas. In understanding, remembering or applying information, he found Plaintiff needed reminding to take care of herself and take her medications. (Tr. p. 25). In interacting with others, the ALJ found Plaintiff got along well with family, friends, neighbors and other persons, and Plaintiff indicated the same to one of the consulting psychiatrists. (Id.). The ALJ further noted that Plaintiff related well to him and others during the hearing setting. (Id.). In concentration, persistence or maintaining pace, the ALJ acknowledged Plaintiff's claim that she was unable to concentrate, but noted consultative psychiatrist Dr. Edelmiro Rodríguez ("Dr. Rodríguez") who examined Plaintiff in January 2016 found her with good concentration and attention. (Id.) The ALJ also indicated that Plaintiff readily gave all the relevant medical information at the hearing with no issues. (Id.) As to adapting or managing oneself, the ALJ found Plaintiff was able to perform a wide variety of household chores, such as being able to take care of her son and pets, launder clothing twice a week, perform light household chores, watch television, listen to the radio, read the Bible, attend church a few times a week, and occasionally drive and noted no episodes of decompensation. (Id.) The ALJ found that Plaintiff was able to

perform a wide variety of household chores with minimal impediment. As such, he held that Plaintiff's medically determinable mental impairments caused no more than a mild limitation in any of the functional areas. As a result, the ALJ concluded that Plaintiff's mental impairments were non-severe.

Plaintiff objects to the ALJ's finding, for example, as to the second issue by arguing that here is conflicting evidence in the record as to whether or not Plaintiff got along well with others. She posits that the ALJ failed to consider her subjective complaints and personal testimony at the hearing, as well as her Adult Function Report at Exhibit 8F, where she stated that she was antisocial and did not like being around people. Furthermore, she avers that Dr. Rodríguez found that, even though she was cordial toward her neighbors, his report also indicates that she was socially distant and did not participate in communal activities.

Plaintiff forgets, however, that resolution of these conflicting matters is entrusted to the ALJ's role as sole factfinder. The task of resolving factual conflicts and reaching a conclusion from that evidence is reserved strictly for the Commissioner. See Purdy, 887 F.3d at 13 (resolution of conflicts in the evidence and the determination of the ultimate question of disability is reserved for Commissioner); and Doucet v. Astrue, No. 12-2123, 2013 WL 12126354, at *1 (1st Cir. May 24, 2013) ("Weighing the evidence was the ALJ's prerogative."). The ALJ, as the primary factfinder, simply evaluated all the evidence, both record and subjective, and reached a conclusion as to that evidence. The Court further notes that the ALJ was able to personally witness Plaintiff's demeanor during the

hearing, adding further support to his conclusion. See Purdy, 887 F.3d at 13 (credibility determinations are the responsibility of the Commissioner).

The information contained in the medical record further bolsters the ALJ's final conclusion that Plaintiff was only mildly limited in her mental state and therefore did not have a severe impairment in this area. Plaintiff's treating physician, Dr. Parrilla, saw her throughout 2014 and 2015. Although he found Plaintiff sad, he consistently found her coherent, relevant and oriented (Tr. p. 105); was not suicidal or psychotic (Tr. p. 105); alert and approachable (Tr. p. 106); with normal psychomotor activity and stable and appropriate affect. (105). Dr. Parrilla saw her again in 2018 and noted that her medication made her feel more at ease. (Tr. p. 241). He further found her alert, coherent, relevant and oriented, well dressed and groomed. (Id). In May 2018, he found her worried, crying and upset, but still coherent, relevant and without suicidal thoughts or intentions. (Tr. p. 242).

Through 2018, Plaintiff was also seen by Dr. Lorna González, whose findings were very similar to Dr. Parrilla's, to wit, appropriate eye contact, appropriate and logical thought process and content, good attention span, appropriate mood and affect insight and judgment. (Tr. pp. 246-251).

Consulting psychologist Dr. Rodríguez saw Plaintiff in January 2016. Dr. Rodríguez found Plaintiff sad and with some memory problems, yet with appropriate affect; without phobias, delusions or paranoia; in good contact with reality; well oriented in time place and person; with good attention and concentration; and with good judgment and insight. (Tr. pp. 535-537). He offered a guarded prognosis and opined she was able

to handle funds. (Id.).

Taken together, all these opinions bolster the ALJ's ultimate determination that Plaintiff's mental condition was not severe. Irlanda, 955 F.2d at 769 (court must uphold Commissioner's findings if a reasonable mind could accept the evidence as a whole as adequate to support the Commissioner's conclusion).

This conclusion at step 2, regarding Plaintiff's mental condition, is further reinforced by the opinions of state agency psychologists Dr. Gladys Jiménez ("Dr. Jiménez") and Dr. Luis Rodríguez ("Dr. L. Rodríguez"), who reviewed the medical record in January 2016 and March 2016, respectively. Dr. Jiménez found that Plaintiff had "mild depressive signs and anxiety, and a mostly preserved cognitive and functional capacity". (Tr. p. 260). Dr. L. Rodríguez concurred with her assessment and both opined that Plaintiff's mental condition was not severe because her conservative record showed she had no more than mild mental limitations. (Tr. pp. 258-60 and 274-75).

As is widely known, state agency consultants are highly qualified medical personnel who are experts in the evaluation of the medical issues involved in disability claims and whose conclusions are to be afforded great weight if they are supported by other evidence in the record. 20 C.F.R. § 404.1527(e)(2)(i); see also Coggon v. Barnhart, 354 F. Supp. 2d 40, 54 (D. Mass. 2005); 20 C.F.R. §404.1527(e)(2) ("the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"). Therefore, the opinions of Drs. Jiménez and L. Rodríguez constitute substantial evidence which, together with the

remaining record evidence, supports the ALJ's determination at step 2 that Plaintiff's mental condition was not severe.[3]

Moreover, because the ALJ's evaluation of this claim proceeded past step 2 and considered the effects of all of Plaintiff's impairments through the remainder of the sequential evaluation process, any error that might have been committed at step 2 in determining the severity of her mental impairment was harmless and had no effect. See Irizarry-Martínez v. Comm'r of Soc. Sec., Civ. No. 15-2006 (BJM), 2017 WL 87018, at *5 (D.P.R. Jan. 10, 2017) ("[A]ny error the ALJ committed by overlooking Irizarry's shoulder condition in step two was harmless and does not constitute reversible error."); Coe v. Colvin, Civ No. 15-30037 (MGM), 2016 WL 3350995, at *5 (D. Mass. June 15, 2016) (errors committed in step two are harmless when the ALJ considers the impairment through the required evaluation process to determine the RFC); Pérez v. Astrue, Civ. No. 11–3007 (KPN), 2011 WL 6132547, at *4 (D. Mass. Dec. 7, 2011) (if the ALJ considers all the severe and non-severe symptoms when assessing the RFC, any error committed in step two was harmless).

For these reasons, the Court concludes that the ALJ properly evaluated all record and subjective evidence and correctly concluded at step 2 that Plaintiff's mental impairment was not severe, and said determination was supported by substantial evidence as a whole.

---

[3] The Court notes that Plaintiff chose not to contest the ALJ's factual findings and conclusion that her physical ailments did not render her disabled. For this reason, even if the Court were to find that Plaintiff's mental condition was severe, she would still have to establish that her mental condition, by itself, was sufficiently incapacitating to render her disabled without consideration of her physical RFC. The Court finds she has fallen short of that goal.

### B. Error at step 5 of the evaluation.

Plaintiff's second assignment of error consisted of three undeveloped sentences contesting the ALJ's findings at step 4 that Plaintiff was able to return to her past occupation as Medical Secretary. She argues that "the ALJ decided at step 4 of the evaluation that Plaintiff was capable of performing her past relevant job, therefore a step 5 of the sequential evaluation was not necessary according to the ALJ. However, both the representative and the ALJ posed hypotheticals (sic) questions to the vocational expert concerning mental limitations with different outcomes." (Docket No. 20, p. 9).[4] Plaintiff offered no further discussion in support of this issue.

It has long been held that arguments not fully developed or made in passing are deemed waived. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). The Court has no idea what Plaintiff's argument is because no effort at discussing or developing the issue was made. This is enough for the Court to dispose of this matter. It is not the Court's job to do counsel's work.

---

[4] The Commissioner frames the issue as follows: "Contrary to Plaintiff's suggestion (Pl. Mem. 9), the ALJ did not err at step four by failing to address the vocational expert's testimony in response to hypotheticals that involved mental limitations." In his response, he offers that "the burden is on Plaintiff to demonstrate that she had a limitation and she has not provided any objective evidence showing that she experiences those additional limitations". (Docket No. 23, pp. 11-12). Assuming this is what Plaintiff's assignment of error meant, the Court agrees with the Commissioner. Plaintiff has not established at step 2 that her mental impairment was severe. Therefore, whether any mental impartment was discussed at step 5 is irrelevant because Plaintiff bears the burden at steps 1 through 4 to establish a condition that prevents her from performing any gainful activity. López-González v. Comm'r of Soc. Sec., 59 F. Supp. 3d 372, 375 (D.P.R. 2014); Santiago v. Sec'y of Health & Human Serv's., 944 F.2d 1, 5 (1st Cir. 1991) ("At steps one through four, the claimant has the burden of proving that she cannot return to her former employment because of the alleged disability. Once a claimant has demonstrated a severe impairment that prohibits return to her previous employment, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy that the claimant can perform"). It is also worth to note that the ALJ's findings are made after presiding over the hearing, and therefore the questions asked about mental capacity at step 5 were most likely made in an abundance of caution.

As is well known, although the record may support more than one conclusion, this Court must uphold the Commissioner "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Ortíz, 955 F.2d at 769 (*quoting* Rodríguez, 647 F.2d at 222); see also, Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). At this juncture, however, the issue is not whether on appeal Plaintiff can articulate an interpretation of the evidence in her favor, but whether a reasonable factfinder could have weighed the evidence in the same way as the ALJ and whether substantial evidence supports that conclusion. Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 144 (1st Cir. 1987). Where the facts permit diverse inferences, the Court will affirm the Commissioner even if the Court might have reached a different result, as long as that result is supported by substantial evidence. Rodríguez Pagán v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

Taken together, the record in this case provides ample support for the ALJ's conclusion that Plaintiff was not completely disabled as alleged and her mental state did not prevent her from performing her last occupation as a Medical Secretary. In view of the above, the Court finds no error with the Commissioner's conclusion that Plaintiff was not disabled and finds it is supported by substantial evidence in the record as a whole.

## CONCLUSION

For the reasons above discussed, the Court finds there is substantial evidence on the record in support of the Commissioner's decision that Plaintiff was not disabled. Consequently, the Commissioner's decision is AFFIRMED.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 15th day of January 2021.

                                    S/CAMILLE L. VELEZ-RIVE
                                    CAMILLE L. VELEZ RIVE
                                    UNITED STATES MAGISTRATE JUDGE